

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS AT WORCESTER

CHERYL A. MONTANARI
    Plaintiff,

vs.

BLAIRE HOUSE OF MILFORD;
ESSEX GROUP MANAGEMENT CORP.,
THOMAS SULLIVAN, alias; and
MAUREEN GULINO, alias,
    Defendants

C.A. No. 04-40012-NMG

## AMENDED COMPLAINT

### I. Introductory Statement

1. This is an action brought by the Plaintiff, Cheryl A. Montanari, seeking declaratory and injunctive relief, attorney's fees and litigation expenses and other equitable relief, including back pay, as well as compensatory and punitive damages to remedy the unlawful discrimination in employment the Plaintiff suffered on account of her disability and gender in violation of the Massachusetts Fair Employment Practices Act ("FEPA"), M.G.L.A. c. 151B §1 et seq. and the Massachusetts Maternity Leave Act ("MMLA"), M.G.L.A. c. 149, §105D.

### II. Parties

2. The Plaintiff, Cheryl A. Montanari, is a female who resides in the Town of Blackstone, County of Worcester, Commonwealth of Massachusetts, and was formerly employed by Defendant Blaire House of Milford ("Blaire House").

3. Defendant Essex Group Management Corp ("Essex") is a corporation duly organized pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business in the Town of Rowley, County of Essex, Commonwealth of Massachusetts.

4. Defendant Blaire House is a corporation duly organized pursuant to the laws of the Commonwealth of Massachusetts, with its principal place of business located in the Town of Milford, County of Worcester, Commonwealth of Massachusetts, and is owned and/or operated by Defendant Essex.

5. Defendant Thomas Sullivan ("Sullivan"), alias, was, at all relevant times herein, employed by Defendant Blaire House as Executive Director.

6. Defendant Maureen Gulino ("Gulino"), alias, was, at all relevant times herein, employed by Defendant Blaire House as the Adult Day Care Director and was Plaintiff's immediate supervisor.

### III. Jurisdiction

7. The monetary amount claimed herein is sufficient to establish the jurisdiction of this court.

### IV. Venue

8. Venue is proper in this Court insofar as the Defendants maintain a principal place of business within the County of Worcester, Commonwealth of Massachusetts, and conduct business operations within Worcester County.

### V. Exhaustion of Administrative Remedies

9. On or about January 16, 2002, the Plaintiff filed a charge alleging sex and disability discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Massachusetts Commission Against Discrimination ("MCAD").

10. On or about September 11, 2003, more than ninety (90) days since the filing of the charge under the FEPA, the Plaintiff filed a Private Right of Civil Action Request with the MCAD.

11. On or about September 25, 2003, the MCAD issued a Notice of Private Right to Civil Action to the Plaintiff.

## VI. Material Facts

12. Defendant Blaire House operates a senior adult day health care and rehabilitation center that is owned and/or operated by Defendant Essex.

13. On or about May, 1989, the Plaintiff was hired by Defendant Blaire House as a Certified Nursing Assistant ("CNA")/adult activity aid.

14. During all relevant time periods, Defendants Sullivan and Gulino, the Plaintiff's supervisors, had knowledge that the Plaintiff was disabled and was attempting to become pregnant.

15. In fact, on or about April, 2000, the Plaintiff had a lengthy discussion with Defendant Gulino, wherein the Plaintiff discussed her concerns about taking medication for anxiety and depression and Defendant Gulino suggested to her that she talk to a nurse employed by Defendant Blaire House regarding the medication.

16. On or about April, 2000, the Plaintiff requested an accommodation from Defendant Sullivan for her disability, wherefore her driving responsibilities could be temporarily suspended.

17. In response to this request for an accommodation, Defendant Sullivan required the Plaintiff to provide medical documentation to support her disability and her need for an

accommodation, to which the Plaintiff produced a written doctor's note, dated June 6, 2001, documenting Plaintiff's disability and stating that her driving duties should be restricted.

18. The above-cited facts clearly demonstrate that Defendants Gulino and Sullivan were specifically advised of Plaintiff's disability and her need for an accommodation.

19. Both Defendants Sullivan and Gulino were also well aware of the Plaintiff's attempts to become pregnant.

20. Specifically, Defendant Gulino allowed the Plaintiff to start her work day at a later time, so she could obtain fertility treatment, and, when the Plaintiff became pregnant, Defendant Gulino would often reassure her that the pregnancy would be fine.

21. In or about the spring of 2001, while pregnant, the Plaintiff became so ill at work, that Defendant Gulino contacted the Plaintiff's husband and told him to come to the Blaire House because the Plaintiff was in great pain. The Plaintiff was transported by an ambulance from the Blaire House to the hospital. Subsequently, the Plaintiff had a miscarriage while at the hospital, and received flowers and well wishes from the staff at Defendant Blaire House.

22. The above course of events clearly illustrates Defendants Sullivan and Gulino had specific knowledge of the Plaintiff's attempts to becoming pregnant.

23. Beginning on or about May, 2001, and until her Family Medical Leave Act ("FMLA") leave on or about June, 2001, the Plaintiff was subjected to ongoing discrimination, including harassment and retaliation, due to her disability and gender.

24. Following Plaintiff's request for a reasonable accommodation under applicable statutory and case law, she was subjected to ongoing discrimination in the workplace, including changes in her work schedule and job duties.

25. Specifically, the Plaintiff's work hours were changed, which required her to come into work one half-hour earlier everyday to assist with the loading of patients into a van.

26. Defendant Gulino also advised the Plaintiff that since she was "unwilling" to drive the patient van, she would be required to accompany a driver and thereafter, unlike other drivers, would still be responsible for bathing the patients and completing the all of her other job duties.

27. On or about June 25, 2001, Defendants Sullivan and Gulino had a meeting with the Plaintiff, where Defendant Sullivan stated that Defendant Blaire House had added a new job—van driver—to Plaintiff's job description, and, because of her impairment she could not perform this new assignment.

28. At the June 25, 2001 meeting, Defendant Sullivan told the Plaintiff that her doctor's note of June 6, 2001 precluded the Plaintiff from performing any of her job duties due to dizziness and drowsiness—a clear misinterpretation of the medical note.

29. Following this meeting, Defendant Sullivan placed the Plaintiff on an involuntary and unnecessary FMLA leave on or about June 25, 2001.

30. After leaving work on or about June 25, 2001, the Plaintiff contacted her doctor regarding the contents of the June 6, 2001 medical note, and was told that the note merely stated that driving would be unwise.

31. On or about June 26, 2001, Plaintiff's doctor issued a more detailed letter to Defendant Blaire House indicating that the Plaintiff was capable of performing her duties as a CNA, but that driving would be unwise.

32. Subsequently, the Plaintiff contacted Defendant Sullivan to discuss the June 26, 2001 medical note, and her interest and ability to return to work.

33. Defendant Sullivan informed the Plaintiff that she could not return to work, unless she was off her medication and would be willing to drive the patient van.

34. Finally, the Plaintiff was informed by Defendant Sullivan that if she did not get off her medication with the twelve (12) weeks of FMLA leave, that she could not have her job back.

35. Following Plaintiff's FMLA leave, on or about October 25, 2001, the Defendants offered the Plaintiff a purported "lateral position."

36. However, the position that the Defendants offered to the Plaintiff did not constitute a lateral change in position.

37. The position offered by the Defendants would have required the Plaintiff to work every other weekend and holidays, whereas the position the Plaintiff previously held did not require the Plaintiff to work any weekends or holidays.

38. Additionally, the position offered was solely a CNA position, whereas the Plaintiff's previous position required her to work only half-time as a CNA and half-time as an activities aide.

39. In addition to the discriminatory actions against the Plaintiff, Defendant Gulino also disclosed confidential medical information to other Blaire House employees.

40. Specifically, Defendant Gulino disclosed information to two (2) Blaire House co-employees regarding Plaintiff's doctor's notes, and stated to one of the co-workers that the Plaintiff had "hung herself with her doctor's note."

41. Further, the Plaintiff requested a maternity leave beginning in July, 2001 through October 14, 2001. This request was also reiterated in a letter sent by Plaintiff's attorney, dated August 2, 2001.

42. Defendants never responded to the aforementioned requests and deny that the requests were ever produced.

43. That, on or about October 26, 2001, due to the ongoing harassment and discrimination, the Plaintiff was constructively discharged from her position as CNA at Blaire House.

44. That the facts of this matter clearly establish that, in denying the Plaintiff a reasonable accommodation, changing her job duties and work hours, forcing her to take an unnecessary and undesired medical leave, ignoring her requests for maternity leave, and offering to reinstate her to an inferior position, Defendants discriminated against the Plaintiff in violation of the FEPA and MMLA.

45. That this conclusion is inescapable in light of the repeated efforts by Defendant Gulino to force the Plaintiff to drive the patient van, despite her repeated requests that she be relieved of driving responsibilities, and Defendant Sullivan's unreasonable and illogical interpretation of Plaintiff's doctor's notes, despite Plaintiff's express statements that she was otherwise fully capable to perform her job duties.

46. That by divulging personal and confidential medical information, refusing to provide the Plaintiff with a reasonable accommodation, forcing her to take a leave of absence, denying her request for maternity leave and ultimately, by constructively discharging her,

Defendants violated the aforesaid provisions of federal and state law on account of Plaintiff's disability and her gender.

47. As a proximate result of the Defendants unlawful and/or discriminatory employment practices, including but not limited to those described herein, the Plaintiff suffered and will continue to suffer loss of income, including past and future salary, pension benefits, severe mental and physical anguish, pain, suffering and other great damage.

### VII. Claims for Relief

48. Plaintiff incorporates in each of the counts below the allegations set forth in ¶¶1 through 47 above.

Count One

### Unlawful Discrimination—M.G.L.A. c. 151B §1, *et seq.*

51. The acts and/or omissions of Defendants, including but not limited to those described herein, constitute unlawful discrimination against Plaintiff in employment on account of her sex in violation of the Fair Employment Practices Act, causing the Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the Fair Employment Practices Act.

Count Two

### Unlawful Discrimination—M.G.L.A. c. 149 §105D

51. The acts and/or omissions of Defendants, including but not limited to those described herein, constitute unlawful discrimination against Plaintiff in employment on account of her right to maternity leave in violation of the Massachusetts Maternity Leave Act, causing the

Plaintiff to suffer damages as aforesaid and thereby deprived the Plaintiff of rights secured under the Massachusetts Maternity Leave Act.

### VIII. Prayers for Relief

**WHEREFORE**, Plaintiff prays that this Court grant the following relief:

1. Judgment in favor of the Plaintiff and against Defendants.
2. An award of compensatory damages.
3. An award of punitive damages.
4. Statutory interest and costs.
5. Such other and further relief as this Court deems just and proper.

### IX. Demand for Jury Trial

Plaintiff hereby demands a trial by jury.

Plaintiff,
Cheryl A. Montanari,
By her attorneys,

SINAPI, FORMISANO & CO., LTD.

Dated: September 17, 2004

Louise A. Herman (#548995)
100 Midway Place, Suite 1
Cranston, RI 02920
(401) 944-9690
(401) 943-9040 (facsimile)

## **CERTIFICATION**

I hereby certify that on this 17th day of September, 2004, I mailed a copy of the within Amended Complaint upon Valerie S. Carter, Esq., 530 Atlantic Ave., Boston, MA 02110.

*[signature]*